UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH DIVISION

| | |
|---|---|
| ZACH ADAMS, individually and on behalf of all others similarly situated | § Docket No. _____ § § |
| Plaintiff, | § JURY TRIAL DEMANDED § |
| v. | § CLASS/COLLECTIVE ACTION § PURSUANT TO 29 U.S.C. § 216(b)/ |
| CAPEX OILFIELD SERVICES, INC. | § FED. R. CIV. P. 23 § |
| Defendant. | § § |

**ORIGINAL COMPLAINT**

I. SUMMARY

1. Plaintiff Zach Adams ("Adams" or "Plaintiff") brings this lawsuit to recover unpaid overtime wages and other damages under the Fair Labor Standards Act ("FLSA"), the Pennsylvania Minimum Wage Act ("PMWA"), 43 Pa. Stat. Ann. § 333.104, the Ohio Minimum Fair Wage Standards Act, O.R.C. §§4111 *et seq.*, ("the Ohio Wage Act"), and the Ohio Prompt Pay Act ("OPPA"), Ohio Rev. Code §4113.15 (the Ohio Wage Act and the OPPA will be referred to collectively as "the Ohio Wage Laws") against Defendant Capex Oilfield Services, Inc. ("Capex" or "Defendant").

2. Capex provides oilfield services and rental equipment to the energy industry.

3. Capex operates throughout the United States, including in Pennsylvania and Ohio.

4. To carry out its work, Capex employed Plaintiff and other workers like him and typically scheduled them for 12-hour shifts, seven (7) days a week, for weeks at a time. But these workers never received overtime for hours worked in excess of 40 hours in a single workweek.

5. Defendant paid these workers a daily rate with no overtime pay and classified them as independent contractors.

6. This collective action seeks to recover the unpaid overtime wages and other damages

owed to these workers under the FLSA, PMWA, and Ohio Acts.

## II. JURISDICTION AND VENUE

7. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the FLSA. 29 U.S.C. § 216(b).

8. The Court has federal jurisdiction over this action pursuant to the jurisdictional provisions of the Class Action Fairness Act, 28 U.S.C. §1332(d). The Court also has supplemental jurisdiction over any state law sub-class pursuant to 28 U.S.C. §1367.

9. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b) and (c) because a substantial part of the events or omissions giving rise to the claim occurred in this District.

## III. THE PARTIES

10. From June to November 2017, Plaintiff Zach Adams worked for Capex as an oilfield contractor and/or Solids Control Consultant.

11. Throughout his employment with Capex, he was paid a day-rate with no overtime compensation and was classified as an independent contractor.

12. His consent to be a party plaintiff is attached as Exhibit A.

13. Plaintiff brings this action on behalf of himself and all other similarly situated workers who were classified as independent contractors and paid by Capex's day-rate system.

14. Capex paid each of these workers a flat amount for each day worked.

15. Capex did not pay these workers a salary.

16. Capex failed to pay them overtime for all hours that they worked in excess of 40 hours in a workweek in accordance with the FLSA, PMWA, and Ohio Wage Laws.

17. The FLSA class of similarly situated employees or potential class members sought to be certified is defined as follows:

> **All current and former oilfield workers who were (1) classified as independent contractors by Capex Oilfield Services, Inc.; (2) paid a**

> **day rate; and (3) performed work for Capex Oilfield Services, Inc. during the past three years.**

18. Plaintiff seeks conditional certification of such a class under 29 U.S.C. § 216(b).

19. Plaintiff worked in Pennsylvania and Ohio for Capex. As a result, he seeks class certification under FED. R. CIV. P. 23 for the PMWA and Ohio claims of the following classes:

> **All current and former oilfield workers in Pennsylvania and Ohio who were (1) classified as independent contractors by Capex Oilfield Services, Inc.; (2) paid a day rate; and (3) performed work for Capex Oilfield Services, Inc. during the past three years.**

20. The FLSA class members and PMWA/Ohio class members are referred to together as "Putative Class Members."

21. Defendant Capex is Canadian affiliate company doing business throughout the United States, including in this District. Capex may be served by serving its registered agent for service of process, **CT Corporation System, 314 E. Thayer Ave., Bismarck, ND 58501**.

### IV. COVERAGE UNDER THE FLSA

22. At all times hereinafter mentioned, Defendant has been an employer within the meaning of the Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

23. At all times hereinafter mentioned, Defendant has been part of an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

24. At all times hereinafter mentioned, Defendant has been part of an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise has and has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person and in that said enterprise has had and has an annual gross volume of sales made or

business done of not less than $500,000 (exclusive of excise taxes at the retail level which are separately stated).

25. At all times hereinafter mentioned, Plaintiff and the Putative Class Members were engaged in commerce or in the production of goods for commerce.

26. As will be shown through this litigation, Capex treated Plaintiff and the Putative Class Members as employees and uniformly dictated the pay practices to which Plaintiff and its other employees (including its so-called "independent contractors") were subjected.

27. Capex's misclassification of Plaintiff as an independent contractor does not alter its status as an employer for purposes of this FLSA collective action.

## V.   FACTS

28. Capex is an oilfield services and rental equipment company operating in Pennsylvania and Ohio.

29. It employs oilfield personnel to carry out its work.

30. For example, Capex employs Matthew Thomason as a Solids Control Technician. *See* Exhibit B.

31. Plaintiff also works for Capex performing the same type of solids control work as Thomason, but Capex considers Plaintiff an independent contractor.

32. Many individuals worked for Capex performing the same or substantially similar job duties as Plaintiff who are/were classified by Capex as independent contractors in connection with Capex's solids control oilfield operations.

33. While exact job titles and job duties may differ, these employees are subjected to the same or similar illegal pay practices for similar work.

34. Specifically, Capex classified the Putative Class Members as independent contractors and paid them a flat sum for each day worked, regardless of the number of hours that they worked

that day (or in that workweek) and did not provide them with overtime pay for hours that they worked in excess of 40 hours in a workweek.

35. For example, Plaintiff worked exclusively for Capex between June and November 2017 as an oilfield contractor/solids control consultant. Throughout his employment with Capex, he was classified as an independent contractor and paid on a day-rate basis.

36. As an oilfield contractor/solids control consultant, Plaintiff spent his time separating drilling fluid from the solids crushed by the drill bit and carried up to the surface in the drilling fluid. Capex typically scheduled Plaintiff to work 12 hour shifts, for as many as 7 days a week. Plaintiff worked well in excess of 40 hours each week while employed by Capex.

37. The work Plaintiff performed was an essential part of Capex's core business.

38. Plaintiff performed the same or similar work to employees of Capex.

39. During Plaintiff's employment with Capex while he was classified as an independent contractor, Capex and/or the company it contracted with exercised control over all aspects of his job.

40. Capex did not require any substantial investment by Plaintiff in order for him to perform the work required of him.

41. Capex determined Plaintiff's opportunity for profit and loss.

42. Plaintiff was not required to possess any unique or specialized skillset (other than that maintained by all other individuals working in his same job position) to perform his job duties.

43. Plaintiff worked for Capex as an independent contractor from June to November 2017.

44. Indeed, Capex and its clients controlled all of the significant or meaningful aspects of the job duties performed by Plaintiff.

45. Capex ordered the hours and locations Plaintiff worked, tools used, and rates of pay received.

46. Even though Plaintiff often worked away from Capex's offices without the presence of a direct Capex supervisor, Capex still controlled all aspects of Plaintiff's job activities by enforcing mandatory compliance with Capex's and/or its client's policies and procedures.

47. No real investment was required of Plaintiff to perform his job, other than hand tools, a vehicle, and personal protective equipment.

48. Capex provided centrifuges, shakers, hoses, tanks, testing equipment, and more equipment associated with solids control work.

49. More often than not, Plaintiff utilized equipment provided by Capex and/or its client to perform his job duties.

50. Capex and/or its clients made the large capital investments in buildings, machines, equipment, tools, and supplied in the business in which Plaintiff worked.

51. For example, Capex prides itself on being a "total solids solutions provider," and "offer[s] industry leading solids control equipment and many proprietary technologies such as Fluid Management Tanks, Centrifuge Stripping Tanks and Centrifuge Floc Tanks." *See* "Specialized Solids Equipment," http://capexoilfield.com/products-solutions/specialized-solids-equipment (last visited March 11, 2018).

52. Plaintiff did not incur operating expenses like rent, payroll, marketing, and insurance.

53. Plaintiff was economically dependent on Capex during his employment.

54. Capex set Plaintiff's rates of pay, his work schedule, and prohibited him from working other jobs for other companies while he was working on jobs for Capex.

55. Capex directly determined Plaintiff's opportunity for profit and loss. Plaintiff's earning opportunity was based on the number of days Capex scheduled him to work.

56. Very little skill, training, or initiative was required of Plaintiff to perform his job duties.

57. Indeed, the daily and weekly activities of the Putative Class Members were routine and largely governed by standardized plans, procedures, and checklists created by Capex and/or its clients.

58. Virtually every job function was pre-determined by Capex and/or its clients, including the tools to use at a job site, the data to compile, the schedule of work, and related work duties.

59. The Putative Class Members were prohibited from varying their job duties outside of the pre-determined parameters.

60. Moreover, the job functions of the Putative Class Members were primarily manual labor/technical in nature, requiring little to no official training, much less a college education or other advanced degree.

61. The Putative Class Members did not have any supervisory or management duties.

62. Finally, for the purposes of an FLSA overtime claim, the Putative Class Members performed substantially similar job duties related to servicing oil and gas operations in the field.

63. Plaintiff performed routine manual and technical labor duties that were largely dictated by Capex and/or its clients.

64. Plaintiff worked for Capex between June and November 2017 as an independent contractor. Plaintiff was not employed by Capex on a project-by-project basis.

65. In fact, while Plaintiff was classified as an independent contractor, he was regularly on call for Capex and/or its clients and was expected to drop everything and work whenever needed.

66. All of the Putative Class Members perform the same or similar job duties and are subjected to the same or similar policies and procedures which dictate the day-to-day activities performed by each person.

67. The Putative Class Members also worked similar hours and were denied overtime as a result of the same illegal pay practice.

68. The Putative Class Members all worked in excess of 40 hours each week and were often scheduled for 12 hour shifts for weeks at a time.

69. Instead of paying them overtime, Capex paid the Putative Class Members a day-rate. Capex denied the Putative Class Members overtime for any and all hours worked in excess of 40 hours in a single workweek.

70. Capex's policy of failing to pay its independent contractors, including Plaintiff, overtime violates the FLSA, the PMWA, and the Ohio Wage Laws because these workers are, for all purposes, employees performing non-exempt job duties.

71. It is undisputed that the Putative Class Members are maintaining and working with oilfield machinery, performing manual labor, and working long hours out in the field.

72. Because Plaintiff (and Capex's other independent contractors who were paid a day-rate) was misclassified as an independent contractor by Capex, he should receive overtime for all hours that he worked in excess of 40 hours in each workweek.

73. Capex's day-rate system violates the FLSA because Plaintiff and the other day-rate workers classified as independent contractors did not receive any pay for hours worked over 40 hours each week.

## VI.   FLSA VIOLATIONS

74. As set forth herein, Defendant has violated, and is violating, Section 7 of the FLSA, 29 U.S.C. § 207, by employing employees in an enterprise engaged in commerce or in the

production of goods for commerce within the meaning of the FLSA for workweeks longer than 40 hours without compensating such employees for their employment in excess of 40 hours per week at rates no less than 1 and ½ times the regular rates for which they were employed.

75. Defendant knowingly, willfully, or in reckless disregard carried out this illegal pattern or practice of failing to pay the Putative Class Members overtime compensation. Defendant's failure to pay overtime compensation to these employees was neither reasonable, nor was the decision not to pay overtime made in good faith.

76. Accordingly, Plaintiff and all those who are similarly situated are entitled to overtime wages under the FLSA in an amount equal to 1 and ½ times their rate of pay, plus liquidated damages, attorney's fees and costs.

### VII.   PMWA VIOLATIONS

77. Plaintiff brings this claim under the PMWA as a Rule 23 class action.

78. The conduct alleged violates the PMWA (43 Pa. Stat. Ann. § 333.104).

79. At all relevant times, Defendant was subject to the requirements of the PMWA.

80. At all relevant times, Defendant employed Plaintiff and each Class Member with Pennsylvania state law claims as an "employee" within the meaning of the PMWA.

81. The PMWA requires employers like Defendant to pay employees at one and one-half (1.5) times the regular rate of pay for hours worked in excess of 40 hours in any one week. Plaintiff and each member of the Pennsylvania Class are entitled to overtime pay under the PMWA.

82. Defendant had a policy and practice of misclassifying Plaintiff and each member of the Pennsylvania class as independent contractors and failing to pay these workers overtime for hours worked in excess of 40 hours per workweek.

83. Plaintiff and each member of the Pennsylvania Class seek unpaid overtime in amount equal to 1.5 times the regular rate of pay for work performed in excess of 40 hours in a

workweek, prejudgment interest, all available penalty wages, and such other legal and equitable relief as the Court deems just and proper.

84. Plaintiff and each member of the Pennsylvania Class also seek recovery of attorneys' fees, costs, and expenses of this action, to be paid by Defendant, as provided by the PMWA.

### VIII. OHIO WAGE LAW VIOLATIONS

85. Plaintiff brings this claim under the Ohio Wage Laws as a Rule 23 class action.

86. The conduct alleged violates the Ohio Wage Laws (O.R.C. §§4111 *et seq.*, and Ohio Rev. Code §4113.15).

87. At all relevant times, Defendant was subject to the requirements of the Ohio Wage Laws.

88. At all relevant times, Defendant employed Plaintiff and each Class Member with Ohio state law claims as an "employee" within the meaning of the Ohio Wage Laws.

89. The Ohio Wage Laws require that employees receive overtime compensation "not less than one and one-half times" (1.5) the employee's regular rate of pay for all hours worked over forty (40) in one workweek, "in the manner and methods provided in and subject to the exemptions of section 7 and section 13 of the Fair Labor Standards Act of 1937." *See* O.R.C. § 4111.03(A); *see also* 29 U.S.C. § 207(a)(1).

90. As an employee for Defendant, Plaintiff and the Ohio Class worked in excess of the maximum weekly hours permitted under O.R.C. §4111.03, but were not paid overtime wages for this time spent working.

91. The OPPA requires that the Defendant pay Plaintiff and the Ohio Class all wages, including unpaid overtime, on or before the first day of each month, for wages earned by them during the first half of the preceding month ending with the fifteenth day thereof, and on or before

the fifteenth day of each month, for wages earned by them during the last half of the preceding calendar month. *See* O.R.C. § 4113.15(A).

92. Defendant had a policy and practice of misclassifying Plaintiff and each member of the Ohio class as independent contractors and failing to pay these workers overtime for hours worked in excess of 40 hours per workweek.

93. During all times material to this complaint, Plaintiff and the Ohio Class were not paid wages, either their regular rates, a minimum wage or overtime wages at 1.5 times their regular rate within 30 days of performing the work. *See* O.R.C. §4113.15(B).

94. Plaintiff and the Ohio Class's unpaid wages remain unpaid for more than 30 days beyond their regularly scheduled payday. In violating the OPPA, Defendant acted willfully, without a good faith basis, and with reckless disregard of clearly applicable Ohio law.

95. Plaintiff and each member of the Ohio Class seek unpaid overtime in amount equal to 1.5 times the regular rate of pay for work performed in excess of 40 hours in a workweek, prejudgment interest, all available penalty wages, and such other legal and equitable relief as the Court deems just and proper.

96. Plaintiff and each member of the Ohio Class also seek recovery of attorneys' fees, costs, and expenses of this action, to be paid by Defendant, as provided by the Ohio Wage Laws.

### IX. CLASS & COLLECTIVE ACTION ALLEGATIONS

97. Plaintiff incorporates all previous paragraphs and alleges that the illegal pay practices Defendant imposed on Plaintiff were likewise imposed on the members of the Classes.

98. Numerous individuals were victimized by this pattern, practice, and policy which is in willful violation of the FLSA, and the state wage laws of Pennsylvania and Ohio.

99. Numerous other individuals who worked with Plaintiff indicated they were improperly classified as independent contractors, paid in the same manner, performed similar work, and were not properly compensated for all hours worked as required by state and federal wage laws.

100. Based on his experiences and tenure with Defendant, Plaintiff is aware that Defendant's illegal practices were imposed on the members of the Classes.

101. The members of the Classes were all improperly classified as independent contractors and not afforded the overtime compensation when they worked in excess of 40 hours per week.

102. Defendant's failure to pay wages and overtime compensation at the rates required by state and/or federal law result from generally applicable, systematic policies, and practices which are not dependent on the personal circumstances of the members of the Classes.

103. Plaintiff's experiences are therefore typical of the experiences of the members of the Classes.

104. The specific job titles or precise job locations of the various members of the Classes do not prevent class or collective treatment.

105. Plaintiff has no interests contrary to, or in conflict with, the members of the Classes. Like each member of the Classes, Plaintiff has an interest in obtaining the unpaid overtime wages owed under state and/or federal law.

106. A class and collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

107. Absent this Action, many members of the Classes likely will not obtain redress of their injuries and Defendant will reap the unjust benefits of violating the FLSA and applicable state labor laws.

108. Furthermore, even if some of the members of the Classes could afford individual litigation against Defendant, it would be unduly burdensome to the judicial system.

109. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of individual members of the classes and provide for judicial consistency.

110. The questions of law and fact common to each of the members of the Classes predominate over any questions affecting solely the individual members. Among the common questions of law and fact are:

    a. Whether Defendant employed the members of the Classes within the meaning of the applicable state and federal statutes, including the FLSA, PMWA, and Ohio Wage Laws;

    b. Whether the members of the Classes were improperly misclassified as independent contractors;

    c. Whether Defendant's decision to classify the members of the Classes as independent contractors was made in good faith;

    d. Whether Defendant's decision to not pay time and a half for overtime to the members of the Classes was made in good faith;

    e. Whether Defendant's violation of the FLSA, PMWA, and Ohio Wage Laws was willful; and

    f. Whether Defendant's illegal pay practices were applied uniformly across the nation to all members of the Classes.

111. Plaintiff's claims are typical of the claims of the members of the Classes. Plaintiff and the members of the Classes sustained damages arising out of Defendant's illegal and uniform employment policy.

112. Plaintiff knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a collective or class action.

113. Although the issue of damages may be somewhat individual in character, there is no detraction from the common nucleus of liability facts. Therefore, this issue does not preclude collective and class action treatment.

### X.  JURY DEMAND

114. Plaintiff demands a trial by jury.

### XI.  RELIEF SOUGHT

115. WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

   a. An Order designating the Potential Putative FLSA Class as a collective action and permitting the issuance of a notice pursuant to 29 U.S.C. § 216(b) to all similarly situated individuals with instructions to permit them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b);

   b. For an Order pursuant to Section 16(b) of the FLSA finding Defendant liable for unpaid back wages due to Plaintiff and the Potential Putative FLSA Class for liquidated damages equal in amount to their unpaid compensation;

   c. For an Order designating the state law classes as class actions pursuant to Fed. R. Civ. P. 23;

   d. For an Order appointing Plaintiff and his counsel as Class Counsel to represent the interests of the both the federal and state law classes;

   e. For an Order awarding attorneys' fees, costs and pre- and post-judgment interest; and

f.     For an Order granting such other and further relief as may be necessary and appropriate.

Respectfully submitted,

By:  */s/ Andrew W. Dunlap*
    Michael A. Josephson
    Pennsylvania Bar No. 308410
    Andrew Dunlap
    Texas State Bar No. 24078444
    Jennifer M. Solak
    Texas State Bar No. 24060634
    (Pending *Pro Hac Vice*)
    **JOSEPHSON DUNLAP LAW FIRM**
    11 Greenway Plaza, Suite 3050
    Houston, Texas 77046
    713-352-1100 – Telephone
    713-352-3300 – Facsimile
    mjosephson@mybackwages.com
    adunlap@mybackwages.com
    jsolak@mybackwages.com

**AND**

Joshua P. Geist
PA. I.D. No. 85745
**GOODRICH & GEIST, P.C.**
3634 California Ave.
Pittsburgh, PA 15212
Tel: 412-766-1455
Fax: 412-766-0300
josh@goodrichandgeist.com

**AND**

Richard J. (Rex) Burch
Texas State Bar No. 24001807
(*Pending Pro Hac Vice*)
**BRUCKNER BURCH, P.L.L.C.**
8 Greenway Plaza, Suite 1500
Houston, Texas 77046
713-877-8788 – Telephone
713-877-8065 – Facsimile
rburch@brucknerburch.com

**ATTORNEYS IN CHARGE FOR PLAINTIFF**